200

## CLIFFORD C. MOSES V. THE STATE.

No. 15907. Delivered May 10, 1933.
Rehearing Denied June 14, 1933.
Reported in 61 S. W. (2d) 112.

The opinion states the case.

*Hamilton, Fitzgerald & Brundy,* of Memphis, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for burglary; punishment, two years in the penitentiary.

On Sunday night, December 6th, a drug store in Quitaque, Briscoe county, Texas, was burglarized and a number of watches, cigarettes, and other articles taken. Some question is raised in the record and argued in appellant's brief, turning upon the question of whether the entry was made in the nighttime; it being alleged in the indictment that it was a nighttime burglary. The owner of the drug store testified that he closed it at 6 o'clock every Sunday evening, and that on the particular date involved he opened the drug store the next morn-

ing at 7 o'clock. Our burglary statute and the decisions are to the effect that the term "night" as used in said statute means any time from thirty minutes after sunset to thirty minutes before sunrise. While we do not find that the matter has been specifically passed on in this state, it appears correct, and is in line with the holdings in other jurisdictions to say that the courts judicially know that on December 6th in Texas the sun sets within a few seconds of thirty-one minutes after 5 o'clock and rises in the morning within a few seconds of fifteen minutes after 7 o'clock. Ruling Case Law, vol. 15, p. 1100; 4 L. R. A., 35, and cases cited in notes. In Allman v. Owen, 31 Ala., 167, also in Sprowl v. Lawrence, 33 Ala., 674, it is stated that the courts will take judicial knowledge of the days of the week as shown by the almanac. It is held in Cincinnati Railroad Co. v. Worthington, 30 Ind. App., 663, that the courts will take judicial knowldege that at a certain hour or a certain date it was or was not daylight. Also in State v. Gunderson, 56 Wash., 672, 106 Pac., 194, that the courts will take judicial knowledge of the extent of the duration of day and night at a particular place at a particular time.

The above statements relate to the contention of appellant that the testimony of the accomplice Harrell, who said that he, together with appellant, Moses, and one Hammonds, burglarized the house in question about midnight, was not corroborated as to the fact that the burglarious entry was made in the nighttime. In addition to what we have said about judicial knowledge, we further observe that the accomplice testified that he with his confederates left Memphis, Texas, in the late afternoon and drove to Quitaque, at which place they arrived between 7 and 8 o'clock, that they went to the restaurant of Van Winkle and had coffee, and that they were around the town waiting until the lights went out in order to commit the burglary. Mr. Van Winkle testified that he saw said parties in his restaurant on that night and served each with a cup of coffee. In addition to this, Dr. Price, who had his office in or adjoining the burglarized drug store, testified that he had occasion to go into the drug store about 9:30 o'clock that night, and that while he was in same three young men came up in a car and wanted him to let them in the drug store, but he declined. He testified that one of the three parties under indictment, Mr. Hammond, was one of the parties he saw at the drug store that night. We think the testimony amply sufficient to corroborate the accomplice as to the fact of the burglary, and also that same was committed in the nighttime. In addition to the facts above stated, there was testimony describing the tracks

of a car near the burglarized store, which tracks were made after a light rain occurring the night of the burglary; also describing the tracks of three parties, having evidently feet of different sizes, which were seen in and around the car tracks and near the burglarized store. There was also testimony that on the next day in Memphis, where this appellant lived, car tracks were observed by the officers whose peculiarities corresponded with those seen in Quitaque as made after the rain. These tracks were followed to a car on the street which belonged to this appellant and which was found at his home a short time after being observed on the streets of Memphis. The measurements of the tracks observed around the automobile tracks in Quitaque were taken and were compared with the shoes worn by appellant, Hammond, and Harrell, and their identity was established by the officer who made the measurements. Harrell, the accomplice, testified to the fact that three of them took the stolen property, upon their return to Memphis from the scene of the burglary, down to his father's farm some miles from Memphis, where they secreted same in a house under some maize. Said stolen property was found by the officers at said place, and it was identified by the owner.

Without discussing the many cases cited by appellant in his interesting brief filed herein, we observe that all of them can be distinguished upon their facts from the case before us. We find four bills of exception in the record. The first complains of the admission of the testimony of Dr. Price. The objection seems based on the proposition that Hammond, the only one of the three persons seen by the doctor whom he identified, was not on trial, and his identification of Hammond would not be binding on appellant, and was not shown to have occurred in his presence. We think there is no substance in the objection. Harrell testified that he was with Hammond and Moses in Quitaque on that night. The testimony that Hammond was there with two other young men, the others not being noticed clearly enough to be identified, would be admissible, and the objections would go to the weight and not to its admissibility. The second bill presents objection to the testimony as to the tracks of the car and of the different people at the different places. We think the testimony admissible; the only question being as to its weight. The third bill of exception complains of testimony that the appellant and Hammond were observed in Quitaque and around the drug store, which was burglarized, some weeks before the alleged burglary. We think this admissible for what it was worth as showing the association and connection of Hammond and appellant, their knowledge of

and presence at and near the burglarized store prior thereto. Bill of excepton No. 4 complains further of the admission of testimony regarding tracks. We see no reason for discussing same.

Believing the evidence sufficient, and that nothing appears in the record manfesting any error, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The testimony of the accomplice Harrell, if corroborated, makes evident that the burglary was committed by the three young men charged with the offense, namely, Harrell, Moses, and Hammond. The property taken from the burglarized premises was found through the aid of the accomplice Harrell. The corroboration of Harrell identifying the appellant as one of the offenders is circumstantial. According to Harrell, he and two companions rode from Memphis in Hall County, about fifty miles, to Quitaque, in Briscoe County, in the automobile belonging to the appellant, Moses. According to Harrell, the automobile was parked near the building in which the offense was committed, and was used as the means of transportation in leaving the building after the offense had been committed. According to the state's testimony, there were circumstances sufficient to show that the burglary took place late at night. There was testimony of a doctor who entered the drug store sometime during the night on which the offense was committed that three persons in an automobile were seen near the premises. The doctor gave the opinion that the appellant was one of the persons who got out of the car. A rain had fallen during the night. An examination of the tracks at the burglarized premises was made early the next morning. The officer who made the examination of the tracks testified without equivocation that they were of three different sizes; that the measurement coincided with the measurement of the shoes worn by each of the appellants; that is to say, each one of the appellants wore a different size shoe, and the measurement of the tracks with those of the shoes found upon the appellant and his companion was identical in measurement with the tracks made near the burglarized premises. There were peculiarities in the tracks of the automobile due to the character of tires which were described by the testimony. An automobile of the same description was identified as belonging to the appellant and found in his possession after the burglary. The sufficiency of the corroborative testimony is

vigorously questioned by appellant's counsel in a very interesting brief and motion for rehearing. The question of the sufficiency of the corroboration often arises, and it is frequently difficult to determine whether it is sufficient to meet the measure made by the statute, namely, article 718, C. C. P., 1925, which reads as follows: "A conviction can not be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The statute itself furnishes no absolute measure for the solution of the question, and the courts have not been able to fix a standard by which, in every case, the sufficiency of the corroborative testimony can be tested.

The participation of the appellant in the commission of the offense is shown by the direct testimony of the accomplice. That the accomplice took part in the offense is demonstrated by the discovery through his declaration of the fruits of the crime. The testimony tends to show that the appellant was a member of a party, including the accomplice, which came to the scene of the crime in the appellant's automobile, and is supported by their association before and after the crime, as shown by other testimony. The testimony of the accomplice is also supported by circumstances identifying the appellant's automobile and by the tracks described by the testimony of the officer tending to show that three persons took part in the commission of the offense and that the tracks which were made by them coincided with the claim of the accomplice that the three perpetrators of the offense were those named by him.

The cogency of the evidence showing the tracks is enhanced when it is considered that the crime took place at nighttime; that a slight rain had fallen before the tracks were made; that there were tracks of three persons shown by the circumstances; that the footwear of each of them was of a different size; and the further fact that the shoes worn by the three persons charged with the crime coincided in size and shape with the tracks mentioned.

The citation of authorities in this character of case is of little use due to the variety of circumstances upon which the claim of corroboration rests and the peculiar language in which the statute upon the subject is framed. The statement of the matter contained in Minor's case, 108 Texas Crim. Rep., 1 (see page 13) namely, that the state is not called upon to point out some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is thought

in the present instance that, viewing the evidence in its entirety, to annul the verdict on the assertion that the demand of the statute mentioned had not been met, would do violence to the legal rights of the state.

The motion for rehearing is overruled.

*Overruled.*